May it please the Court, Teresa Taylor for Askan Holdings, Appellant. Your Honor, so Askan Holdings has since February 2016, since its money was originally seized, regulatory takings from OFAC has suffered immensely as a result.  1500. You've got a ruling which is arguably collateral estoppel on the 1500 question, and you've got a new 1500 question presented by the second complaint. How do you get around that? So looking at the Askan 2, which is the case currently on appeal, that case is drastically different from the first case. The amended complaint in Askan 1 was not considered at all by the prior trial judge and specifically stated such that he could not review it at all. The original complaint... Prior judge, are we talking Askan 1 or Askan 2? Yes, Askan 1. Askan 1. My apologies. So the writ of mandamus that was filed in the U.S. District Court did not allege any takings claims. In fact, it didn't allege any claims. Was it a due process claim? No, it was not a due process claim. Actually, it was not. It was originally filed to specifically... It was declaratory and injunctive, and it was filed specifically and solely to get OFAC to rule and make its decision on the fourth petition filed. Okay, whether or not that's true, the court of federal claims determined that your first complaint was barred by 1500, and you did not appeal that determination, right? No, we did. And then when we appealed, the judge below said, no, the claims are the same as the amended complaint in Askan 1, which was not the case. So the facts here are a little bit confusing with what happened, and I think it's important to understand because it does directly relate to 1500, and the government's going to argue similarly, but for the other side. So if we could go back for a moment. The presiding judge asked you when Askan 1 was handed down by the court of federal claims, right, Askan 1 was handed down, and they said you lose on 1500. You did not appeal that decision to us? No, because that case was different than the one filed in Askan 2, so I apologize. That wasn't the question. No, but they didn't... The presiding judge was asking you, ma'am, was whether or not you appealed that decision. The answer is no. No, I don't believe so, Your Honor. You did not appeal that decision? No. Okay, so that became final. It could not. And then the question is, is that decision collateral estoppel with respect to the second complaint that was filed in the court of federal claims? If I remember, I apologize. And when I look at the two, I find that there's very little difference between them. So why don't we have collateral estoppel between that original decision unappealed and the current one? The first case was not considered on the merits, and the judge said that he could not view them. So it was not actually dismissed under 1500. He was just not able to go and look at... It was not dismissed with prejudice, should I say, because he was not able to view the amended complaint. The first complaint was submitted with... It was submitted in error, and it was based on... Wait, wait, wait. Show me where he says that he can't. Decided on the merits. I believe we included it in our brief and our reply brief, and it was also in the transcript. Where in the appendix is that decision? Gotta give me... I don't know that I can point to it that quickly, but I can certainly... You're now talking about the original decision, the Aspen 1 decision that was rendered by Judge Hertling, correct? That's at appendix 210 and following. I believe his ruling and the direct quote we used from the transcript was that he was barred from considering those... He was barred from looking at Aspen, the amended complaint, which was... In the district court. Which was the takings claim. There was no takings claim filed. The law requires you to, when you're matching, when you're trying to decide whether there is the overlap that 1500 precludes, what you look at is the district court, wherever, state, wherever that pending is, and then you look at the initial filing at the court of federal claims. You don't look at a amended filing. Right. And that is because the law says that is what you do. You're not allowed to look at the amended complaint to see whether there is a prohibited overlap of underlying operative facts. So we have on 221 the conclusion by the court of federal claims and he says that 1500, this case is precisely the sort that section 1500 precludes. So why isn't... No, it precludes from... We lack jurisdiction over the claim so that the motion to dismiss is granted. It did not include any takings claims whatsoever and he was looking at the original complaint file that had no takings claims. Okay, but that doesn't... Your statement about what the court of federal claims did is inaccurate. What we have is a decision that the first court of federal claims complaint was barred by 1500. Then the question for collateral estoppel becomes whether effectively the first complaint and the second complaint are identical, correct? So, your honor... Yes, no. The first complaint and the second complaint are not identical. The amended complaint is not considered... But that's the only question. If they're identical, you're barred by collateral estoppel. There were no takings claims in the first original complaint filed and... No, wait, wait, you're not answering my question. If the first and the second complaint are identical, you're barred by collateral estoppel, right? The first and second complaint of which, I'm sorry... In the court of federal claims. You mean, ask and one, the first original complaint that did not have any takings claims, claims in it whatsoever. And then the second case of which we're on appeal for right now that was a takings complaint. If in fact those two complaints are identical, you're barred. They're not identical. The original one... No, no. Answer my question. If they are identical, you're barred, right? But yes, but that's not what the trial judge in ask and one, the quote that we have in our pleadings, he specifically stated that he was not able to even go to the merits and it was not dismissed. He dismissed on 1500. What are you talking about? He did not go to the merits of any claims. The merits, you're talking about a takings claim. A takings claim, even... The problem is the first complaint that your client filed in the court of federal claims was it referred to the word takings in a heading and it had two subsets of the so-called taking. And both of those two subsets were framed as due process violations. Fifth Amendment due process, not Fifth Amendment taking, correct? That was a clerical error. No, and then you later filed an amended complaint in which you said, oh no, we mean takings. We didn't mean due process, right? So the due process was never... I'm sorry. I see what you're saying. But for me to decide whether the underlying facts, operative facts, are the same for your complaint in district court and in front of me, I have to look at the initial complaint. I'm not allowed to look at the second complaint. So whether you were talking about whether these underlying facts resulted in a due process violation on the one hand, or whether they related in a takings claim on the other, you said that is immaterial to me. I'm simply looking at the underlying facts. Can I explain about the underlying district court case? Because I think there's a little confusion. What he also said is the body of law, 1500 body of law, it doesn't make any difference whether your theory is takings or due process. Can I explain? So long as the underlying facts are the same. And it doesn't make any difference if you ask for a different relief. You ask for an injunctive relief in the district court. You ask for money relief. And the difference in relief makes no difference. All you can look at is underlying facts. Respectfully, Your Honor. You think I'm wrong. Well, because I represented the client after three prior law firms and helped him with the writ of mandamus. And I am very, very familiar with when you see status motion updates filed. Those were not status motions updates. It was contentious about the record, getting the unclassified administrative portion of the record. It was not filed as an APA claim. It was not filed as due process. It was filed specifically to get a decision on the petition. It was filed going back since the money was first originally taken back in 2016. Also, it was if we weren't going to get a decision. You're totally confusing two things here, OK? One is the collateral estoppel. Because the Court of Federal Claims decided that your first complaint was barred by 1500. If the first and the second complaints are the same, then collateral estoppel applies. And that's the end of it. OK, that's one theory. The other theory is that by comparing the complaint now in ASCAN 2 with the district court complaint, that they have the same set of operative facts. So 1500 is independent bar. We don't need to reach that second question if we find there's collateral estoppel. If the first and second complaints in the Court of Federal Claims were essentially identical. And to me, they are. Because they both use the term takings. One refers to due process. The other doesn't. That's a trivial difference. Respectfully, I do not think it's a trivial difference. The claims are drastically different. In fact, it was an incredibly different action that was filed in the district court. It was not a claim for APA. That's not the point. The point is whether the first and second complaints in the Court of Federal Claims are the same. Then I think if you're going to do that, you have to hone in on a clerical error. And that is not good. I don't think that that's proper justice for my client. My client has been trying to get his day on the merits. Takings, which has not happened. Nor can it ever happen on any APA. So it's never going to be the same. Because we never got the unclassified portion of the administrative record. Even though that court ordered Andrea Gackey to appear personally before the court and provide such. And it never happened. So this is it. He has a takings claim. The owner of this company, they tried to start a separate commuter route. They already owned different airline companies. They came to the United States to do a deal. Did their due diligence. Hired multiple firms. Chose to do it in US dollars. Chose to use a US company and a US plane. Money gets seized. They spend multiple years trying to find out why. After your district court case got dismissed, how come at that time you didn't just file a new claims court civil action at that time? Because then you would not have been under threat of another possible 1,500 problems. Well, as I just stated, we do not have the unclassified administrative portion of the record, which you need to file an APA case. We don't have that. So we don't know what happened. We don't know why. I'm talking about a new filing at the Court of Federal Claims, because ASCAN 2 was very clearly under threat of a possible section 1,500 problem, which the district court found. Well, because the takings claims were never considered. And despite the clerical errors, it really was not the same. They were not the same claims. Not the same evidence. Not the same issues. You're talking about a writ of mandamus for an injunction to please issue a decision. During that writ, the petition, fourth petition, was denied. It was during that writ that the client discovered a whole lot of information, including the achievement. That evolved into a situation trying to get the money back, which did not even happen until 2021, September. Then in the meantime, trying to look, OK, well, this is seeing that it's evolving, that it's really happening here. The company's going bankrupt. The parent company goes bankrupt. The international reputational harm to both companies is immense as a result of the taking. Consequential damages. I'm sorry. Excuse me. You got your money back with interest, and under the case law on takings, you're not entitled to consequential damages. Extreme undue delay. I think we have a different opinion. You're not entitled to consequential damages. I think the whole, I think the case law that we've cited, I disagree, Your Honor. I think the case law that we have cited. You have four hills to climb here. And you're stumbling on the preclusion hill. Then you have the merits appeal on SKN 2, which is clearly, in my judgment, 1500 bar. Then you have the mootness argument, because you got paid your money plus interest, and you can't get consequential damages. And you don't, and you questionably don't like, you lack constitutional standing. I disagree. I think our pleadings show the other, and we've cited cases that are excellent. Even the opposing counsel cites cases that can be beneficial to our client here. So I think that the precedent shows that it's more than just getting back exactly what was taken. When a company goes down, you know, Kimball Laundry, all these other cases that we cite, there are a ton of cases here. When the company goes down and the impact has resulted from the initial taking, which was 2016, all the way through to at least 2021, it's not just the $1 million that funded the company to buy a plane. It was way more than that. They lost their licenses. Nobody wanted to deal with them anymore. The international press was, they lost their financing. Their bank accounts were closed. Lots and lots, there was a whole huge ripple effect as a result prior to that money being refunded. So, and I think that it really is unfair to ask Dan to say, we see two identical worlds here, and therefore, same issues. The motion to dismiss at the end, the district court proceedings, that was filed by your client? I'm sorry, can you repeat that? The motion to dismiss, right, was filed... To dismiss, oh, you mean from the wrist? Yeah, I'm talking about, what puzzled me as strange was that you filed the second case, Askan 2, while you had pending a motion to dismiss. No, no, we didn't file that. First off, what happened was, we needed to make sure that we got the money for the client. The government moved to dismiss quickly, and first, there were no claims. Can I finish? Askan 2 was filed on September 2, 2021, correct? I'm talking now about the second case, right? Yes, sounds correct. And while you filed that case, the district court had not yet dismissed. That was because there were... Let me just finish. That is not... But that's the reason why there is a merits decision on the second Askan, not an issue preclusion of $1,500. If I could explain what happened there? You don't contest that the district court case was still pending when you filed Askan 2. That's not actually correct. The judge was waiting until we confirmed that the check was in hand in our client's possession. That's why there was delay there. Originally, once the license was issued by OFAC to Askan, we had to get... OFAC had to issue multiple licenses for the money to even move back to Askan, which took a very long time. But if you had waited to file Askan 2 until after September 23, you would not have been met with a $1,500 claim. Well, again, the writ amandamus is nothing like a takings claim, and they're not the same, not the same evidence, not the same claim, not anything the same. The writ amandamus is declaratory and injunctive. I think we're out of time. Thank you. All right. Thank you. We'll give you a minute for rebuttal. It's 3 a.m. All right. Thank you, Your Honor. May it please the Court. So, you know, as we set forth in our briefing, we think that there's both a collateral estoppel issue here with respect to Askan 1, even if that was not the case, and just a de novo review of 1500. There's a 1500 issue here. And it's not a difficult 1500 issue here, because what Askan is pointing to in both of these cases, the amended district court, that's the operative complaint. It's not the first complaint, as my colleague was saying here. Once you look at it, it's all the same government conduct. It's OFAC's blocking. It's the alleged failure to get the funds back. And it's the license to the state of New York that allowed the funds to achieve. I mean, that's the conduct. And that's in both cases. And, you know, under Tohono, under this court's precedent, you have to look at the operative facts. The relief doesn't matter. We can call it a writ. We can say it's seeking money damages. That doesn't matter. If it's labeled due process or takings or contract or tort, that's also irrelevant. I mean, that's Supreme Court precedent. So this is not a difficult case on 1500. And here we actually have the rare situation where there's actually a collateral estoppel issue with respect to 1500. And, you know, I think part of that is, as Your Honor was pointing out, Askan could have waited, I think, 22 days once the dismissal took effect and actually filed the complaint in the Court of Federal Claims. And at that point, there would be no 1500 bar. There would still be a mootness issue and the other issues that we pointed out, but there wouldn't be a fifth. If collateral estoppel, how would you define the issue that was actually litigated in Askan 1 so that we can decide whether, you know, that's the same issue going on in Askan 2? Sure. It would be that when a court determines that the core actions in both cases are the blocking, the failure to return the funds, and issuing... Well, it's simpler than that. The decision in Askan 1 is that the complaint was barred by 1500. And if the complaint, the second complaint is nearly identical to the first one, this collateral estoppel, end of issue, right? Right. But you have to look at the operative facts. That's what I was trying to get at. You only have to look at the operative facts as between the two Court of Federal Claims complaints, not comparing it to the district court, because collateral estoppel says you don't need to relitigate the issue. It's already been decided. But for issue preclusion, would we have to figure out and compare what are the operative facts of Askan 1 complaint versus the operative facts of the Askan 2 complaint and figure out whether those are identical? Well, I mean, we think that you have to look at what would be material. And so, you know, both, there was a 1500 adjudication based upon the complaint. The complaints are basically the same, except one mentions due process. Exactly. Under my colleague's theory of how collateral estoppel would work, they could just keep dismissing and refiling over and over again, even though there's already been a 1500 adjudication based upon the same set of facts. I mean, you can't just change one non-material label to something, and that precludes issue preclusion. But even if we didn't get there, it's just an obvious 1500 problem, sort of regardless on a de novo slate. So however it's sliced, I think here, there would have to be issue preclusion. But even if that wasn't the case, there's still just, it's barred by 1500. And this isn't, I mean, this isn't a closed case. Issue preclusion is an affirmative defense. We don't, we can reach the second ground if we want. I mean, here, if we choose, we can decide there is issue preclusion, case is over. Or we could say we allied that issue up as an affirmative defense, it's not jurisdictional. And we can take the second question, which is whether or not the second complaint is barred by 1500. It's the second complaint that's in front of us in the first place. The first complaint, as we pointed out earlier, never got appealed. That is correct, Your Honor. It did not get appealed. The district court complaint did not get appealed either. And so, you know, just speaking a little bit to about the unfairness here, you know, again, it could wait, they could have waited 22 days and filed the Court of Federal Claims complaint. Well, if they'd done that, then they wouldn't have had a 1500 complaint. They wouldn't have had an issue preclusion complaint. Correct. But again, just, and I just want to briefly address, I mean, I agree with what you're saying, Your Honor. But also here, as a third ground, and just getting to sort of the unfairness issue that was raised here, Aspen has gotten back its funds with interest. And so even if somehow they were able to get around issue preclusion and 1500, they have gotten, the case is, the takings claim is moot because they have gotten the funds back with interest. There's been nothing in any of these briefs contesting the amount of interest that was insufficient here. And so there's... They're basically arguing that the proximate cause of the failure of the whole company was the conduct here that withheld their funds for that period of time. But Your Honor, I think, as you mentioned in the earlier colloquy, that Mitchell and you can't get consequential damages here. And here we're not even talking about something like a contract where maybe when you focus on the property interest, there could possibly be some sort of additional recovery. It's a fund of money. And if you're talking about a temporary taking, which is what this would possibly be, even if we were able to get to the merits, it would just be fair rental value. And fair rental value for money would just be interest. And that's what they've gotten. And even under the OFAC regulations, they have to be paid, quote, commercially reasonable interest. And there's been no dispute that that's what took place here. And so really, you know, however it's sliced, there's really no basis to reverse what the Court of Federal Claims did here. They were correct on all of the grounds for dismissal here. And... Okay. Anything further? If there's nothing further, I just ask that you affirm the decision of the Court of Federal Claims. Okay. Thank you. Ms. Taylor, you have a minute. I would just ask the Court to consider, please, the impact here. You do have the entire global trade community watching here to see a company that has done nothing nefarious whatsoever, that had the million dollars seized when the deal was canceled. There was nothing nefarious about the deal. It was simply canceled. In return, where the money goes, there are only a few places in the world where the money, U.S. dollars can be cleared. Then the money is blocked. The client does everything possible that it can to find out what's going on so it doesn't repeat this. Is there, you know, an SDN involved so that they can continue to do business, convince their investors, convince the other companies involved, other business dealers, you know, continue to do business with us? But that wasn't possible. Everything shuts down. Your money was blocked by OFAC. It must be something nefarious. They try to find out. They engage multiple law firms, lots of money, due diligence. They do everything they possibly can. They file three petitions. Everyone is denied. They're not given an explanation. There is no SDN publicly listed. Usually the regulations require them to do such. They did not. So then the fourth petition, filed almost a year later, please issue a decision to go to the court. Please, declaratory injunctive relief, please force OFAC to tell us what's going on and issue this decision. Completely different facts. Completely different evidence. It is not the same. The takings claim is different. It is from the 2016 all the way forward. I think we're out of time. Okay. Thank you. Thank you, Mr. Yale. Thank you, Mr. Yale. Case is submitted.